**BONNIE S., et al., Plaintiffs,**

v.

**Drew ALTMAN, et al., Defendants.**

**Civ. No. 87–3709.**

United States District Court,
D. New Jersey.

April 19, 1988.

Daisy B. Barreto, Deputy Atty. Gen., Trenton, N.J., for defendants.

Ilene Shane, for plaintiffs.

## OPINION

SAROKIN, District Judge.

## INTRODUCTION

This case presents the unique question of whether a person confined to a mental institution must obtain the consent of his or her appointed guardian to challenge that commitment and confinement. The issue is complicated where the guardian is an agency of the state or is appointed by an agency of the state. Ancient and recent times are rife with stories of persons wrongfully confined to mental hospitals and institutions. No more vital right exists in our society than the ability to challenge those commitments through adequate due process. To require the individuals so confined to obtain the consent of their keepers in order to launch those challenges would render the right meaningless. If a conflict exists between the alleged incompetent and his or her guardian, the consent of the guardian should not be a prerequisite to a petition to challenge the commitment.

The danger of wrongful commitment is so onerous that no impediment should stand in the path of its review. It would be perverse to conclude that a person who wished to challenge a finding of mental incompetency was barred from doing so because of the existence of the finding.

Plaintiffs appeal from two provisions of the magistrate's January 27, 1988 order. The court finds the magistrate's actions contrary to law, vacates the magistrate's order, and remands the case to him for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs Bonnie S., Dolores C., Sylvia T., Agnes P., and Agnes F. are mentally retarded adults who are currently residing at New Jersey Developmental Center in Totowa, New Jersey. Plaintiff Dorothy G. is an adult woman who also resides at the Center, but who is not mentally retarded.[1] The plaintiffs allege that, at some time in the past, the defendants committed them to the Center and appointed guardians for them without hearings or review of any kind. Dolores C., Sylvia T., and Bonnie S. receive public guardianship services from the Bureau of Guardianship Services, an entity within New Jersey's Division of Developmental Disabilities. Agnes P. and Agnes F. receive private guardianship services.

On September 10, 1987, the plaintiffs filed this lawsuit against the defendants, state officials responsible for the administration of state programs for the mentally retarded. In their complaint they allege deprivations by the defendants of their constitutional and federal statutory rights. Their allegations call into question the lawfulness of their involuntary commitment and wardship without standards, hearings, or judicial review. Amended Complaint, Claims I—VI, IX. They also state claims for violations of the equal protection clause, Amended Complaint, Claim VII, and the Social Security Act, 42 U.S.C. §§ 1396 and 1396a *et seq.*, Amended Complaint, Claim VIII.

In January, the plaintiffs moved before the magistrate to compel production of plaintiffs' complete records as well as the guidelines the state uses in appointing guardians. By order filed January 29, 1988, the magistrate directed the defendants to turn over to plaintiffs only the "current medical records (those within the last three months)" for plaintiffs Bonnie S., Dolores C., and Sylvia T. The magistrate failed to order any disclosure of the records of plaintiffs Agnes P. and Agnes F. The magistrate also ordered, *sua sponte,* that plaintiffs' counsel contact the private guardians of plaintiffs Agnes P. and Agnes

---

**1.** Dorothy G. has no guardian and consented to the state's disclosure of her records to her attorneys. The defendants honored her release and provided plaintiffs' counsel with Dorothy G.'s complete records. Dorothy G. is therefore unaffected by the magistrate's order and takes no part in this appeal.

**102**

F. within thirty days of January 11, 1988, to obtain their consent to the pursuit of the litigation. If counsel failed to contact the guardians or failed to obtain consent, the magistrate ordered that those two plaintiffs would suffer the entry of voluntary dismissals.

DISCUSSION

The court may not engage in a *de novo* review of this matter, for it is on appeal from the magistrate. Under F.R.C.P. 72(a), the court may only "modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." In this case, though, the court finds both of the magistrate's challenged holdings contrary to law.

■ The magistrate ordered that Agnes P.'s and Agnes F.'s cases would be voluntarily dismissed if their attorneys were unable to obtain consent to the prosecution of the actions from their private guardians. Implicit in this order was a holding that the private guardians have exclusive control over their wards' involvement in civil litigation. The magistrate may have based his ruling on N.J.S.A. 3B:12–57(d), which confers upon a guardian the authority to "institute an action to compel the performance by any person of a duty to support the ward or to pay sums for the welfare of the ward ..."

However, there is no real support—in the statute or elsewhere—for the magistrate's ruling. The statute only confers on the guardian the authority to file suit on behalf of the ward; nowhere does it make that authority exclusive. *See* N.J.S.A. 3B:12–57(d) ("[h]e *may* institute an action ...."). More importantly, "[m]odern authorities generally regard the requirement that a guardian sue or be sued for the incompetent person as a protection of the interests of the incompetent person *rather than as a limitation on his or her capacity to institute suit.*" S. Brakel, J. Parry and B. Weiner, *The Mentally Disabled and the*

*Law* 437 (3d ed. 1985) (emphasis added). Especially in a lawsuit such as this one, where the plaintiffs are challenging the lawfulness of their confinement—a confinement in which their guardians accede—wards cannot be forbidden from suing without their guardians' consent. That consent, by definition, is unlikely to be forthcoming. *See Norcom v. Rogers,* 16 N.J.Eq. 484 (Ch. 1864); *In re Williston,* 17 N.J.Misc. 400, 10 A.2d 159 (Monmouth Cty. Orphans Court 1939). *See also* 44 C.J.S. Insane Persons § 142; *Quada v. Quada,* 396 S.W.2d 232, 234 (Tex.Civ.App.1965); *Guardianship of Walters,* 37 Cal.2d 239, 231 P.2d 473, 480 (1951); *State v. Barton,* 210 Ark. 816, 198 S.W.2d 512, 516 (1946); *Westerdale v. Johnson,* 191 Neb. 391, 215 N.W.2d 102, 103 (1974); *Mathews v. Mathews,* 25 Misc.2d 250, 203 N.Y.S.2d 475, 479 (Sup.Ct.1960); *In re Sigel,* 372 Pa. 527, 94 A.2d 761, 763 (1953).

This is not to say, of course, that wards are free to file suit without any constraints. Rather, there must first be a showing that the interests of ward and guardian are in conflict.[2] *See Melick v. Melick,* 17 N.J.Eq. 156, 159 (1864). In this case, however, the plaintiffs had no opportunity to make any such showing, for the magistrate raised the issue of consent *sua sponte.* The court therefore vacates the magistrate's order and remands the case to the magistrate for a hearing to determine whether the interests of the wards and their guardians conflict.

■ The magistrate also limited the discovery requests of Bonnie S., Dolores C. and Sylvia T. to "the current medical records (those within the last three months)" and "the most recent individual habilitation plan ... if it includes current medical information." *See* Magistrate's Order (January 29, 1988), at 2. He based this limitation on N.J.S.A. 30:4–24.3, which provides that

[a]ll certificates, applications, records, and reports made pursuant to the provi-

---

**2.** At argument, the defendants unflinchingly took the position that plaintiffs may not challenge the lawfulness of their guardianship and institutionalization without the consent of their guardians. They also contended that the plain-

tiffs may not challenge in court the actions of the state agency responsible for their confinement because that agency has its own internal review procedures. The court rejects these arguments.

sions of this Title and directly or indirectly identifying any individual presently or formerly receiving services in a noncorrectional institution under this Title, or for whom services in a noncorrectional institution shall be sought under this act shall be kept confidential and shall not be disclosed by any person, *except insofar as:*

(1) the individual identified *or* his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent. . . .

Nothing in this section shall prevent disclosure, upon proper inquiry, of information as to a patient's current medical condition to any relative or friend or to the patient's personal physician or attorney if it appears that the information is to be used directly or indirectly for the benefit of the patient.  (emphasis added)

The magistrate compelled discovery only of current medical records, and held that all other records were confidential.  Yet the plaintiffs have consented to the disclosure of their records *in their entirety,* even though their guardians have withheld their consent.  The statute clearly states that otherwise confidential documents may be disclosed with the consent of "the individual identified *or* his legal guardian."  That these plaintiffs' guardians have withheld consent to the disclosure of their wards' records is therefore irrelevant, because the wards have themselves given consent.

Of course, if the defendants have some basis for challenging the capacity of the plaintiffs to give knowing and informed consent, or if there is some other valid reason why the plaintiffs should not see their own medical files, the defendants may apply for a hearing before the magistrate on this issue.  However, the magistrate's order denying the discovery request for lack of consent was contrary to law.