Herbert J. HEICHELBECH, et al., Plaintiffs,

v.

David L. EVANS, et al., Defendants.

Civ. A. No. 91–118–1–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Sept. 2, 1992.

709

Phyllis J. Holmen, Torin D. Togut, and
Lisa J. Krisher, Atlanta, Ga., for plaintiffs.

Beverly Patricia Downing, Atlanta, Ga.
and John Robert Francisco, Macon, Ga., for
defendants.

Robin S. Nash, Decatur, Ga., guardian ad
litem, for Robert J. Heichelbech, III.

## ORDER

OWENS, Chief Judge.

Before the court is a motion for partial summary judgment filed by plaintiff Heichelbech and plaintiff-intervenors Reid and Fleming. Plaintiff and plaintiff-intervenors are incapacitated adults acting through a guardian ad litem, and in their motion, they seek declaratory and injunctive relief against defendant employees of the State of Georgia for their policy of not discharging a voluntary patient from a state mental hospital without the consent of the patient's legal guardian.

Plaintiff and plaintiff-intervenors seek a declaratory judgment that the State policy concerning voluntary patient discharge violates their rights to due process and equal protection under § 1983. They also seek an injunction to enjoin defendants from enforcing this policy in the future. In addition, if the court grants plaintiffs' motion, they intend to seek monetary damages from the State defendants in their individual capacities under § 1983. The State defendants, who are officers of the Georgia Division of Mental Health, Mental Retardation and Substance Abuse or of Central State Hospital, have filed a motion for summary judgment based upon qualified immunity.

Prior to the filing of these motions, the parties agreed not to serve the complaints of the plaintiff-intervenors upon defendants. Therefore, as plaintiff-intervenors are not proper parties to this action, any relief granted in this order applies only to plaintiff Heichelbech's claim.

## FACTS

In this case, plaintiff Heichelbech is an incapacitated adult who is a former voluntary patient at Central State Hospital ("Hospital"). He has a history of repeated admissions to psychiatric facilities for treatment of mental illness. He was originally admitted to the Hospital as an involuntary patient [1] on May 13, 1988, and his mother was appointed his legal guardian shortly thereafter. His mother, as legal guardian, transferred plaintiff's status to that of voluntary patient [2] on May 26, 1988.

On February 15, 1990, plaintiff submitted a written request to defendants for discharge from the Hospital. His legal guardian did not consent to his request. The Hospital neither discharged plaintiff as he requested nor conducted an involuntary civil commitment hearing to determine if he should be transferred back to involuntary patient status.

On March 6, 1990, defendant Hall, a designee of the Chief Medical Officer at the Hospital, reviewed plaintiff's medical records. Hall determined that plaintiff did not meet the involuntary patient criteria and was ready for discharge if an appropriate placement were available. However, Hall also determined that plaintiff was not fully recovered from his mental disability and could still benefit from additional hospitalization.

At this time, no suitable alternative placement was available to plaintiff, and plaintiff's guardian refused either to consent to plaintiff's discharge or to accept plaintiff into her home if he were discharged. Thus, despite his request, plaintiff was not discharged from the Hospital or afforded an involuntary commitment hearing.

Plaintiff again submitted a written request for discharge on January 3, 1991, and his attorney submitted another request on

---

1. A "[m]entally ill person requiring involuntary treatment" is "a person who is mentally ill and (A) who presents a substantial risk of imminent harm to himself or others, as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to himself or to other persons, or (B) who is so unable to care for his own physical health and safety as to create an imminently life-endangering crisis." O.C.G.A. § 37–3–1(12).

2. The status of an involuntary patient may be transferred to that of voluntary patient if the patient has been declared legally incompetent, the patient's guardian consents to the transfer, and the patient demonstrates some evidence of mental illness and is suitable for treatment. O.C.G.A. § 37–3–20.

March 2, 1991. However, he was not discharged until August 14, 1991, when a suitable alternative placement for him was found and his guardian consented to his discharge.

Defendants admit that while plaintiff was a patient in the Hospital, the State had a special policy regarding the discharge of voluntary patients with legal guardians: if a patient had a legal guardian, that patient was not discharged or afforded an involuntary commitment proceeding without the consent of his legal guardian. This policy was based upon the State's interpretation of O.C.G.A. § 37–3–22(a), the statute applying to voluntary patient discharge:

> A voluntary patient, ..., who has admitted himself to a facility pursuant to subsection (a) of Code Section 37–3–20 or any voluntary patient's personal representative, legal guardian, parent, spouse, attorney, or adult next of kin may request such patient's discharge in writing at any time after his admission. If the patient was admitted on his own application and the request for discharge is made by a person other than the patient, the discharge shall be conditioned upon the agreement of the patient thereto, unless such other person is the legal guardian of the patient's person. Within 72 hours, excluding Sundays and legal holidays, of the delivery of a written request for release to the chief medical officer, the patient must be discharged from the facility, unless the chief medical officer finds that the discharge would be unsafe for the patient or others, in which case proceedings for involuntary treatment must be initiated.

According to defendants, under this statute, a voluntary patient does not have a right to request a discharge if he was admitted to the Hospital by his legal guardian; only his guardian can request a discharge. In contrast, plaintiff contends that the statute gives a voluntary patient the right to request a discharge whether or not his legal guardian consents.

This court addressed the question of the proper interpretation of O.C.G.A. § 37–3–22(a) in an order entered on March 23, 1992. The court held that O.C.G.A. § 37–3–22(a) unambiguously states that "**any** voluntary patient's ... attorney ... may request such patient's discharge in writing at any time after his admission," and upon such request, a state hospital must either discharge the patient or initiate proceedings for involuntary commitment within 72 hours. Because plaintiff's attorney had submitted a written request for plaintiff's discharge, the designated statutory procedures for discharge should have been invoked. Therefore, defendants' failure either to discharge plaintiff or to initiate involuntary commitment proceedings violated the statute. Since this order was entered, defendants have agreed to comply with the court's interpretation of the statute.

Plaintiff now seeks a declaratory judgment that defendants violated his rights to due process and equal protection when they failed to discharge him from the Hospital or to initiate involuntary commitment proceedings. He also seeks an injunction ordering defendants to comply with the statute in the future. In addition, if plaintiff receives a favorable ruling, he will seek compensatory damages from defendants in their individual capacities under § 1983. Defendants seek summary judgment against a potential damages claim based upon qualified immunity.

## DISCUSSION

In order to prevail on his § 1983 claim, plaintiff must show 1) that he has been deprived of a right created by federal law or under the United States Constitution and 2) that the person or entity which deprived him of the right was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Plaintiff contends that defendants denied him his rights to procedural due process and equal protection when they neither discharged him nor began involuntary commitment proceedings after he requested a discharge. There is no dispute that defendants, as state mental health officers, are state actors.

712

### I. Due Process

To support a procedural due process claim, plaintiff must first show that he was deprived of a significant interest protected under the Constitution. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). This interest can arise either from the Constitution itself or from state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983).

It is well-established that the right to be free from unwarranted involuntary commitment to a mental hospital is a significant liberty interest entitled to due process protection under the Fourteenth Amendment. *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972). It is clear that plaintiff's continued confinement in the Hospital after he requested a discharge deprived him of his liberty.

Plaintiff was also deprived of a liberty interest created by state law. The Georgia Code, O.C.G.A. § 37–3–1 *et seq.,* provides detailed procedures for the admission and continued confinement of mentally ill patients in state mental hospitals. Section 37–3–22(a) specifically gives a voluntary patient the right to be discharged from a mental hospital or to be afforded an involuntary commitment hearing within 72 hours after he requests a discharge. The language of this provision contains terms such as "shall" and "must" that require a hospital to follow these procedures. The "unmistakably mandatory character" of this language "demands a conclusion that the State has created a protected liberty interest" for persons like plaintiff, who have been classified as voluntary patients. *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). The Hospital failed to comply with the required procedures after plaintiff requested a discharge; therefore, plaintiff was deprived of this state-created liberty interest.

Once plaintiff has established that he was deprived of a significant liberty interest, the court must determine whether he suffered this deprivation without due process. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). This determination is made by asking "what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).

In this case, the only "process" that plaintiff received after he requested a discharge was that some of the defendants reviewed his medical records. He was never afforded an involuntary commitment hearing and was not discharged until eighteen months after his request, when his guardian consented to it.

Defendants contend that a review of medical records is the only "process" to which plaintiff is entitled when he is a voluntary patient. However, this argument fails because, in these circumstances, plaintiff was not a true voluntary patient. Georgia law defines his commitment as voluntary because his condition was not severe enough to require involuntary commitment and because his guardian consented to his commitment. However, plaintiff himself did not consent to his commitment; hence, his continued confinement in the Hospital was involuntary. *See Doe v. Austin,* 848 F.2d 1386 (6th Cir.1988) (state commitment of mentally retarded adults upon application by a guardian is involuntary), *cert den.,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988). As an involuntary patient, plaintiff was entitled to the due process protections that the State must provide to justify an involuntary commitment. Due process requires the State to show through clear and convincing evidence that a person to be involuntarily committed meets the following criteria: (1) He must be mentally ill and (2) he must be dangerous to himself and others. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979).

Moreover, once a patient has been legally committed to a mental hospital against his will, due process requires periodic reviews of his condition to continue his involuntary commitment. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45

L.Ed.2d 396 (1975). If a patient is no longer mentally ill or dangerous, then it is unconstitutional to confine him against his will. *See Foucha v. Louisiana,* — U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (holding that an insanity acquittee, although still considered dangerous, has right to discharge or involuntary commitment proceedings when he is no longer mentally ill). At the time of his request for discharge, plaintiff only met the criteria for voluntary commitment; therefore, he was entitled either to be discharged or afforded an involuntary commitment hearing. Nevertheless, the State contends that even if plaintiff was entitled to the due process protections of an involuntary patient, the State's failure to invoke these protections in plaintiff's case was still constitutionally adequate.

This argument is based upon the fact that plaintiff is an incapacitated adult with a legal guardian. As an incapacitated adult, the patient cannot act on his own behalf. Therefore, according to the State, only the guardian should be able to invoke due process procedures on behalf of his incapacitated ward.

It is true that when a court appoints a guardian for an incapacitated person, that person loses certain rights under Georgia law. For example, a ward loses the power to consent to medical treatment and the power to establish his residence. O.C.G.A. § 29–5–7(d)(3) & (4). However, there is a big difference between the right to challenge one's involuntary confinement in a mental hospital and the rights to establish a residence and to refuse medical treatment. In fact,

> No more vital right exists in our society than the ability to challenge [involuntary] commitments through adequate due process. To require the individuals so confined to obtain the consent of their keepers in order to launch those challenges would render the right meaningless.

*Bonnie S. v. Altman,* 683 F.Supp. 100, 101 (D.N.J.1988). Furthermore, the Georgia Code expressly states that an incapacitated adult "shall not be deprived of any civil, political, personal, or property rights without due process of law." O.C.G.A. § 29–5–7(a).

Despite the importance of this right, defendants contend that because an incapacitated person loses certain powers to his guardian when a guardian is appointed for him, only the guardian can make the decision of whether an incapacitated person should remain in a mental institution. They rely on *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), to support this argument.

In *Parham,* the Supreme Court found that Georgia's procedure of admitting a minor as a voluntary patient into a state mental hospital upon the application of his parent satisfied due process. No formal hearing on the legitimacy of the confinement was necessary; an informal inquiry by a neutral fact finder to determine whether the statutory requirements for voluntary admission were met was sufficient. *Id.* at 607, 99 S.Ct. at 2506.

The procedure was constitutionally adequate even when the minor was against being institutionalized. The Court found that the parents "retain a substantial, if not the dominant, role in the decision [to institutionalize their child], ... and that the traditional presumption that the parents act in the best interests of their child should apply." *Id.* at 604, 99 S.Ct. at 2505. Therefore, a parent can have his child "voluntarily" committed to an institution even when the child is against it.

However, the Court also concluded that the parent is not given unlimited discretion:

> [T]he child's rights and the nature of the commitment decision are such that parents cannot always have absolute and unreviewable discretion to decide whether to have a child institutionalized. They, of course, retain plenary authority to seek such care for their children, subject to a physicians's independent examination and medical judgment.

*Id.* Thus, a child can be institutionalized against his wishes with the consent of his parent only if a physician conducts an informal inquiry to determine if the child meets the voluntary admission requirements.

The State contends that the procedure for admitting a minor by his parents in *Parham* is analogous to the situation in this case. At the time of his discharge request, a physician reviewed plaintiff's medical records and determined that plaintiff met the criteria for voluntary commitment—he showed some evidence of mental illness and could benefit from hospitalization. Moreover, his guardian consented to his hospitalization. A physician's informal inquiry, defendants argue, was all that is required under *Parham* in these circumstances.

However, there are several distinctions between the circumstances in *Parham* and those in this case. First, *Parham* dealt exclusively with minors. In contrast, plaintiff in this case is an incapacitated **adult**. The relationship between a parent and his minor child is very different from the relationship between a guardian and his adult ward.

The Sixth Circuit discussed the distinction between the parent-child relationship and the adult-guardian relationship in *Doe v. Austin*, 848 F.2d 1386 (6th Cir.1988), *cert den.*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988). In *Doe*, the court found that *Parham* did not apply to the involuntary commitment of mentally retarded patients with guardians:

> The Court in *Parham* was concerned with the commitment of minor children, and its conclusions flow more or less naturally from the unique and traditional relationship shared between parent and child.... "Once someone becomes an adult, one's parents lose that degree of authority found so crucial in *Parham*."
> ... Moreover, the interest of the parents in avoiding "significant intrusion into the parent-child relationship," as noted in *Parham*, ... is simply not as great in the case of an adult.

*Id.* at 1393 (cites omitted). Therefore, an adversary proceeding was required for the initial and continued commitment of mentally retarded persons with guardians to satisfy due process.

*Parham* also can be distinguished from the case at bar because it only applies to procedures for the initial admission of minors. The initial admission of plaintiff to the Hospital is not being challenged. Furthermore, in *Parham*, the Court expressly stated:

> [W]e have no basis for determining whether the review procedures of the various hospitals are adequate to provide the process called for or what process might be required if a child **contests** his confinement by **requesting a release.** These matters require factual findings not present in the District Court's opinion.

*Parham*, 442 U.S. at 617, 99 S.Ct. at 2511 (emphasis added). Since this case only involves a challenge to the process provided when an incapacitated adult requests a release, *Parham*, by the Supreme Court's own language, is inapplicable.

Hence, plaintiff has shown the court that defendants violated his rights to due process. He had a constitutionally protected interest in being free from involuntary confinement, and due process requires that he be afforded an adversary proceeding to challenge his confinement. The State's policy of discharging a voluntary patient or affording him an involuntary commitment hearing only upon the request of the patient's guardian deprived plaintiff of his right to challenge his confinement and violated due process.

## II. Equal Protection

■ Plaintiff also contends that defendants violated his rights to equal protection by distinguishing between voluntary patients with legal guardians and those without in its discharge procedure. Defendants' policy at the time of plaintiff's commitment was only to discharge a voluntary patient with a guardian after the guardian consented to the discharge. In contrast, a voluntary patient without a guardian was discharged or provided with an involuntary commitment hearing immediately. Plaintiff argues that there is no rational basis for this distinction.

■ In order to overcome an equal protection challenge, the state must show that the classification is rationally related to a

legitimate state purpose. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Defendants contend that the fact that plaintiff has a legal guardian provides a rational basis for distinguishing plaintiff from voluntary patients without guardians.

The court agrees with defendants' contention. Because of the special nature of the relationship between a guardian and his ward and the legal problems unique to that relationship, defendants have a rational basis for treating voluntary patients with guardians differently from those without. Therefore, plaintiff's equal protection claim must fail.

III. Qualified Immunity

▮ Defendants contend that they are entitled to qualified immunity from plaintiff's § 1983 claims against them in their individual capacities:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Decisions concerning civil commitment are discretionary functions. *Estate of Gilmore v. Buckley*, 608 F.Supp. 554, 561 n. 12 (D.Mass.1985) ("There is no question that civil commitment decisions are discretionary functions to which qualified immunity attaches."), *aff'd*, 787 F.2d 714 (1st Cir.), *cert den.*, 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986).

In order to overcome defendants' claim of qualified immunity, plaintiff must show that defendants violated a clearly established right. *Zeigler v. Jackson*, 716 F.2d 847 (11th Cir.1983). Plaintiff has failed to meet this burden for he has cited no clearly established law concerning the right of incapacitated adults with legal guardians to challenge their commitment without the consent of their guardians. In addition, plaintiff has failed to show that the contours of the right are sufficiently clear that

"a reasonable official would understand that what he is doing would be a violation of that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Defendants have shown that they were acting in good faith in not discharging plaintiff or affording him an involuntary commitment hearing when his guardian did not consent to his request for discharge. They enforced this practice based upon advice from the Attorney General's Office that this policy was in compliance with state and federal law. Hence, they are immune from plaintiff's claim against them in their individual capacities for damages under § 1983.

CONCLUSION

Defendants violated plaintiff's due process rights in failing to discharge him or to afford him an involuntary commitment hearing when he requested a discharge. Accordingly, the court GRANTS plaintiff's motion for partial summary judgment in part and DECLARES that defendants' practice of refusing to invoke the procedures designated in O.C.G.A. § 37–3–22(a) for voluntary patients with legal guardians violates due process.

However, the court does not find that defendants' practice violates equal protection; therefore, the court DENIES plaintiff's motion for partial summary judgment on this claim. Furthermore, as defendants have agreed to comply with the court's interpretation of O.C.G.A. § 37–3–22(a) in the future such that it applies to voluntary patients with guardians, there is no need for an injunction demanding compliance. Until such time as plaintiff shows that defendants are not complying with the court's interpretation of the statute and injunctive relief is necessary, the court DENIES plaintiff's request for injunctive relief.

Finally, the court finds that defendants are entitled to qualified immunity from plaintiff's claims against them in their individual capacities. Accordingly, the court GRANTS defendants' motion for summary

judgment against plaintiff's claims for damages.

SO ORDERED.