48 A.3d 357

DAMIAN CALIENDO, AN INCAPACITATED PERSON, BY AND THROUGH HIS GUARDIANS, DANIEL AND ROSAMUND CAL-IENDO, PLAINTIFF–APPELLANT, v. JENNIFER VELEZ, COMMISSIONER, NEW JERSEY DEPARTMENT OF HUMAN SERVICES, IN HER OFFICIAL CAPACITY; KENNETH W. RITCHEY, ASSISTANT COMMISSIONER, NEW JERSEY DE-PARTMENT OF HUMAN SERVICES, DIVISION OF DEVELOP-MENTAL DISABILITIES, IN HIS OFFICIAL CAPACITY; WIL-LIAM WALL, CHIEF EXECUTIVE OFFICER, HUNTERDON DEVELOPMENTAL CENTER, IN HIS OFFICIAL CAPACITY, AND CHRISTOPHER HOMA, COTTAGE TRAINING SUPERVI-SOR, HUNTERDON DEVELOPMENTAL CENTER, IN HIS PERSONAL CAPACITY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 7, 2012—Decided July 17, 2012.

Before Judges PARRILLO, ALVAREZ and SKILLMAN.

*Curtis D. Edmonds* argued the cause for appellant (*Disability Rights New Jersey, Inc.*, attorneys; *Mr. Edmonds*, on the briefs).

*Gerard Hughes,* Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General, attorney; *Melissa H. Raksa,* Assistant Attorney General, of counsel; *Mr. Hughes,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D. (retired and temporarily assigned on recall).

This appeal challenges the validity of a regulation adopted by the Department of Human Services, *N.J.A.C.* 10:41–3.2(b), which provides that incident reports prepared by the Division of Developmental Disabilities are not public records and may be released only by court order. Appellant, a developmentally disabled adult who resides at the Hunterdon Developmental Center, contends that this regulation is inconsistent with *N.J.S.A.* 30:4–24.3, which authorizes a developmentally disabled resident of a state institution to consent to the release of a confidential document that mentions the resident. We reject this challenge and uphold the validity of *N.J.A.C.* 10:41–3.2(b).

The appeal was precipitated by an incident that occurred at an annual Christmas party held on December 1, 2007 at the cottage in the Hunterdon Developmental Center where appellant resides. When appellant's parents and guardians, Daniel and Rosamund Caliendo, arrived at the cottage, they observed appellant unattended, facing the wall, with his wheelchair tilted up in a position that prevented him from using his feet to move it, crying for someone to help him. The Caliendos immediately released the wheelchair from this position. They then asked the staff in attendance why their son had been placed in such a helpless position, but did not receive a satisfactory response.

Subsequently, the Caliendos submitted a written inquiry to Hunterdon Developmental Center concerning the incident involving their son. A member of the Hunterdon staff with the title "Quality Assurance Specialist" conducted an investigation of the incident, which included interviews of the members of the staff on

duty in the cottage when it occurred. The results of the Quality Assurance Specialist's investigation were set forth in a fifteen-page report, dated December 11, 2007, which contained findings of fact, a series of conclusions regarding the incident, and recommendations for remedial actions to prevent a similar occurrence.

After receiving this report, the Chief Executive Officer at Hunterdon sent the Caliendos a letter, dated December 13, 2007, which summarized the results of its investigation. The letter stated that whatever member of the staff put their son's wheelchair in a tilted-back position "did so out of the disregard for the client's right to unrestricted mobility[,]" but that the investigation did not reveal the identity of that person. The letter also stated that "[a]dditional training will be conducted to assure that [appellant's] rights . . . are protected."

The Caliendos advised officials of the Department of Human Services that they were not satisfied with this response and claimed that they were entitled, as appellant's guardians, to see the entire December 11, 2007 investigation report. However, the Department refused to release the report to the Caliendos on the ground that it was confidential.

Appellant subsequently filed a multi-count complaint in the Law Division against the Commissioner of the Department of Human Services, the Chief Executive Officer at Hunterdon and various other officials. One count of the complaint challenged the validity of *N.J.A.C.* 10:41–3.2(b). Every other count has now been resolved by a settlement agreement and dismissal based on that agreement. The Law Division transferred the count challenging *N.J.A.C.* 10:41–3.2(b) to this court in accordance with *Rule* 2:2–3(a)(2).

During the course of the proceedings before the Law Division, the trial court ordered the disclosure to the Caliendos of a redacted version of the December 11, 2007 investigation report. In addition, the Division provided an unredacted version of the report to Disability Rights New Jersey, the agency appointed to represent the interests of developmentally disabled persons in

accordance with 42 *U.S.C.A.* § 15043, which also represents appellant in this appeal, but that agency was prohibited from disclosing the unredacted copy to appellant and his parents.

■ The regulation at issue in this appeal provides in pertinent part:

> The following Division and provider records are not public and can only be released upon judicial order. These Division and provider records include:
>
> 1. Investigations of unusual incidents;
>
> 2. Initial Unusual Incident Reports and
>
>    Unusual Incident Follow up Reports;
>
> 3. Any and all documents and materials related to a pending investigation of an unusual incident;
>
> . . . .
>
> 5. Intra- and inter-agency communications and procedures that are considered by the Division to be Advisory, Consultative and Deliberative
>
>    Material; Risk Management documents; and self-critical analyses. . . .
>
> [*N.J.A.C.* 10:41–3.2(b).]

Appellant argues that this regulation is inconsistent with *N.J.S.A.* 30:4–24.3(a), which provides in pertinent part:

> All certificates, applications, records, and reports made pursuant to the provisions of Title 30 . . . and directly or indirectly identifying any individual presently or formerly receiving services in a non-correctional institution under Title 30 . . . shall be kept confidential and shall not be disclosed by any person, except insofar as:
>
> a. the individual identified or his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent. . . .

Appellant argues that *N.J.S.A.* 30:4–24.3(a) gives him, as "a[n] individual . . . receiving services in a non-correctional institution," an unfettered right of access to any "report" of the Division "directly or indirectly identifying" him.

However, it is plain on the face of *N.J.S.A.* 30:4–24.3 that it does not give patients in state institutions any right of access to government reports. Rather, *N.J.S.A.* 30:4–24.3 protects the privacy rights of patients by providing that any report identifying them "shall be kept confidential and shall not be disclosed" unless the patient or his legal guardian "shall consent." This right to prevent disclosure to a third party of a government report identi-

fying the patient does not confer any right upon the patient to obtain access to that report.

The Legislature has addressed the subject of access to government records, whether by the public at large or individuals having a more specific interest in the records, by enactment of other statutory provisions, including in particular the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13. OPRA states that "government records shall be readily accessible for inspection," but also recognizes the need to prevent access to certain governmental records "for the protection of the public interest[.]" *N.J.S.A.* 47:1A–1. OPRA expressly exempts "inter-agency or intra-agency advisory, consultative, or deliberative material" from the definition of "government record." *N.J.S.A.* 47:1A–1.1.

This exemption from disclosure under OPRA is commonly referred to as the "deliberative process privilege." *Educ. Law Ctr. v. N.J. Dept. of Educ.,* 198 *N.J.* 274, 284, 966 *A.*2d 1054 (2009). Under this exemption, "a record, which contains or involves factual components, is subject to the deliberative process privilege when it was used in the decision-making process and its disclosure would reveal the nature of the deliberations that occurred during that process." *Id.* at 299, 966 *A.*2d 1054. Thus, to determine whether the exemption applies, "[a] court must assess such fact-based documents against the backdrop of an agency's deliberative efforts in order to determine a document's nexus to that process, and its capacity to expose the agency's deliberative thought-processes." *Id.* at 299–300, 966 *A.*2d 1054.

It is also noteworthy that in *McClain v. College Hospital,* 99 *N.J.* 346, 359, 492 *A.*2d 991 (1985), which involved in part the interpretation of the Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4 (repealed by *L.* 2001, c. 404), which was the predecessor to OPRA, the Court expressly recognized the high degree of confidentiality that must be given to the results of internal investigations into health care services such as the investigation the Division conducted regarding the incident involving appellant:

> ... [D]isclosure of the materials involved in an internal investigation into health-care service invokes serious and important questions of public policy deserving

careful consideration by the courts. An applicant seeking the opinions, conclusions, sources of information and investigative techniques of the agency should demonstrate a need more compelling than the agency's recognized interest in confidentiality.

In addition to the right of access to government records provided by OPRA, there also continues to be a common law right of access to government records, *N.J.S.A.* 47:1A–8, under which a person with a specific private interest in a government record may have a right of access in a wider range of circumstances than under OPRA. *See Education Law Center, supra,* 198 *N.J.* at 302–03, 966 *A.*2d 1054.

Appellant may well have had a right of access to some portion of the investigatory report regarding the December 1, 2007 incident under either OPRA or the common law right of access. Indeed, the Law Division judge to whom the case was assigned ultimately ordered the disclosure to the Caliendos of a redacted version of the report, which order could have been based upon OPRA or the common law right of access.[1] However, *N.J.S.A.* 30:4–24.3 does not give appellant an unfettered right of access to the report that circumvents the restrictions upon access to government records imposed under OPRA and the common law right of access.

Appellant relies upon *Bonnie S. v. Altman,* 683 *F.Supp.* 100 (D.N.J.1988), in support of his argument that *N.J.S.A.* 30:4–24.3(b) gives residents of state institutions a right of access to records that identify them. The primary issue considered in that opinion was whether persons committed to a mental institution must obtain the consent of their appointed guardians to challenge their commitments. *See id.* at 101–02. The court held that such consent was not required. *Id.* at 102. The court also considered whether parts of the committees' medical records they sought to obtain in order to support their challenges to their commitments

---

[1] The trial court did not issue any opinion indicating the rationale for this order. The court also may have ordered the disclosure of the redacted report as part of ordinary discovery relevant to appellant's other claims in his Law Division action.

could be withheld from disclosure. *Id.* at 102–03. The court held that the committees were entitled to such disclosure under *N.J.S.A.* 30:4–24.3(b) upon a showing that they had the capacity to give knowing and informed consent to production of their medical records.

*Bonnie S.* involved only committees' rights of access to their own medical records and not, as in this case, an agency investigatory report in which their names are mentioned.[2] In any event, insofar as the court in *Bonnie S.* construed *N.J.S.A.* 30:4–24.3(b) to establish a right of access to the documents listed in that section, as distinguished from a right to prevent their disclosure to third parties, we conclude, for the reasons previously discussed, that this construction was incorrect.

In support of his challenge to the validity of *N.J.A.C.* 10:41–3.2(b), appellant also relies upon *N.J.S.A.* 3B:12–57(f), which requires guardians such as the Caliendos to "establish the ward's places of abode[,]" *N.J.S.A.* 3B:12–57(f)(1), "provide for the [ward's] care, comfort and maintenance," *N.J.S.A.* 3B:12–57(f)(3), and take various other actions in the ward's best interests. However, *N.J.S.A.* 3B:12–57(f) does not deal with the subject of access to government records. We recognize that the important responsibilities *N.J.S.A.* 3B:12–57(f) confers upon a guardian are one factor a court may consider in determining whether a document should be shielded from disclosure under OPRA based on the deliberative process privilege, *see Educ. Law Ctr., supra,* 198 *N.J.* at 287, 966 *A.2d* 1054 (noting that "[b]ecause the [deliberative

---

[2] We note that the regulations under which the Division operates distinguish between "client records" and "Division records." "Client records" are defined as the "organized compilation of documents ... that relate to the provision of services to an individual." *N.J.A.C.* 10:41–1.3. "Division records" are defined as the "organized compilation of documents ... that relate to the operation of a Division component." *Ibid.* These regulations give guardians an unfettered right of access to "client records," *N.J.A.C.* 10:41–5.1(a), which was the type of record involved in *Bonnie S.* However, under *N.J.A.C.* 10:41–3.2(b), a guardian must obtain a court order to be entitled to access to a "Division record" such as the investigatory report of the incident involving appellant.

process] privilege is a qualified one, a litigant can still obtain the requested materials upon a showing that the need for the materials overrides the government's interest in confidentiality") or the common law right of access, *see id.* at 303, 966 *A.*2d 1054 (noting that under the common law right, "a plaintiff's interest in disclosure of the relevant documents must outweigh the State's interest in non-disclosure"). Nevertheless, *N.J.S.A.* 3B:12–57(f) provides no support for appellant's argument that *N.J.S.A.* 30:4–24.3 confers an unfettered right upon a resident of a state institution to obtain access to any document that mentions the resident.

Accordingly, we reject appellant's challenge to the validity of *N.J.A.C.* 10:41–3.2(b).[3]

Affirmed.

---

[3] Although we reject appellant's argument that *N.J.A.C.* 10:41–3.2(b) is inconsistent with *N.J.S.A.* 30:4–24.3, we note that a request under OPRA for production of a document that falls under *N.J.A.C.* 10:41–3.2(b) would be subject to the procedures set forth in OPRA, *see N.J.S.A.* 47:1A–5 to –7, which may be more expeditious than the procedures set forth in *N.J.A.C.* 10:41–3.2(b). We encourage the Department to review its procedures regarding the kind of request for document production that resulted in the filing of this action to facilitate access by developmentally disabled residents of state institutions and their guardians to documents, or the parts of documents, to which there is no legitimate objection to disclosure.